**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Gaius Dipigney

    v.                                   Civil No. 13-cv-304-LM
                                                  Opinion No. 2014 DNH 214

AutoZoners, LLC


**O R D E R**

In a case that has been removed from the Merrimack County Superior Court, Gaius Dipigney has sued his former employer, AutoZoners, LLC, in two counts, asserting claims under both state and federal law for national-origin discrimination. Before the court is AutoZoners' motion for summary judgment. Dipigney objects. For the reasons that follow, AutoZoners' motion for summary judgment is granted.

**Summary Judgment Standard**

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (quoting Cortés-Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must "view[ ] the entire record 'in the light most

hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cnty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

## Background

Unless otherwise indicated, the following facts are undisputed. Dipigney is African American. He was born in St. Lucia, West Indies, and speaks with an accent. AutoZoners hired him as a part-time sales clerk in September of 2009. In April of 2011 he received a promotion to the position of Parts Sales Manager and a transfer to AutoZoners' store in Hooksett, New

Hampshire.  Neil Thompson was the District Manager for the New
England District.[1]

   As a Parts Sales Manager, Dipigney was responsible for
answering telephone calls from commercial customers when those
who had primary responsibility for that task were unavailable.
As a result, Dipigney answered about one call per day from a
commercial customer.  In April or May of 2011, Thompson learned
that some commercial customers had reported having difficulty
understanding Dipigney on the telephone because of his accent.
In May of 2011, Thompson spoke with Dipigney about that issue.
Dipigney says that Thompson said: "Gaius, I would like you not
to answer the commercial calls because customers don't
understand your accent."  Def.'s Mem. of Law, Billok Decl., Ex.
G, Dipigney Dep. (doc. no. 16-9) 61:18-20.  Thompson describes
his conversation with Dipigney a bit differently: "I did not
tell him not to – nor ask him not to – answer commercial calls.
Instead, I simply suggested that if a commercial customer
complains of difficulty understanding him on the phone, he
should pass off the call to someone else at the store."  Def.'s

_____

[1] There may be some minor disagreement over whether Thompson
was Dipigney's District Manager for the entire time he was
employed at the Hooksett store, but whether that was the case
does not appear to be a material fact.  See Daniels v. Agin, 736
F.3d 70, 78 (1st Cir. 2013) ("A fact is material if it could
affect the outcome of the suit under governing law.") (citation
omitted).

Mem. of Law, Thompson Decl. (doc. no. 16-26) ¶ 22.  For purposes
of ruling on AutoZoners' motion for summary judgment, the court
adopts Dipigney's version.

"On May 22, 2011, Dipigney was promoted to full-time status
and received [a] pay raise [from $10.50 per hour] to $11.35 per
hour."  Def.'s Mem. of Law, Haluga Decl. (doc. no 16-12) ¶ 11.
In October of 2011, five months after Thompson told Dipigney not
to answer calls from commercial customers, Dipigney received a
positive performance review and an increase in pay that he
characterizes as one of the highest raises given to any employee
in the Hooksett store.  See Dipigney Dep. 76:23-77:1.

The incident that led to Dipigney's discharge occurred on
March 30, 2012, eleven months after Thompson told Dipigney not
to answer calls from commercial customers.  On that day, after
his shift was over, Dipigney spent approximately 45 minutes
inside the Hooksett store, waiting to be picked up, while
wearing a hip holster containing a visible handgun.  In 2012,
the AutoZoners company policy regarding workplace security, of
which Dipigney was aware, provided in pertinent part:

- AutoZoners must never

. . . .

    - bring a gun, knife that has a blade over 3 inches
      in length, or other weapon into the workplace.
      Workplace includes all AutoZone property,

4

> buildings, facilities, vehicles and parking areas
> unless otherwise authorized by state law.

Def.'s Mem. of Law, Haluga Decl., Ex. H (doc. no. 16-20), at

Bates 0421.  Later in the day on which Dipigney carried his gun

inside the Hooksett store, Thompson received a complaint from a

customer concerning an employee at the Hooksett store named

Gaius who was carrying a gun on his waist.  Thompson directed

the Regional Human Resources Director, Nick Haluga, to

investigate.  Haluga subsequently reported to Thompson that

Dipigney had admitted to bringing his gun inside the store, and

recommend that Dipigney be discharged.  Thompson concurred, and

on April 11, 2012, AutoZoners terminated Dipigney's employment.

This suit followed.

In his complaint, Dipigney claimed that the change in his

job duties in May of 2011 and his discharge in April of 2012

were acts of racial discrimination by AutoZoners.  Dipigney now

characterizes his claim as one for national-origin

discrimination based upon his discharge, and the court proceeds

on that basis.  At various points Dipigney also characterizes

Thompson's directive not to answer calls from commercial

customers as an illegal act.  But, it does not appear that he is

basing a legal claim on that directive and, even if he were, the

court would readily rule that directing Dipigney not to answer

calls from commercial customers does not qualify as a

sufficiently adverse employment action to support a Title VII

claim.  As the First Circuit has explained:

> An adverse employment action "typically involves
> discrete changes in the terms of employment, such as
> 'hiring, firing, failing to promote, reassignment with
> significantly different responsibilities, or a
> decision causing significant change in benefits.'"
> Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st
> Cir. 2010) (quoting Burlington Indus., Inc. v.
> Ellerth, 524 U.S. 742, 761 (1998)).  To be adverse, an
> employment action "must materially change the
> conditions of plaintiffs' employ." Id.  (quoting Gu
> v. Bos. Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002))
> (internal quotation marks omitted).

Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir.

2012) (parallel citations and subsequent history omitted).

Telling Dipigney not to answer calls from commercial customers

was not a material change in the conditions of Dipigney's

employment.  See id. ("The loss of a shift on holiday weeks

. . . does not rise to the level of an adverse employment

action.").

## Discussion

Dipigney asserts claims for national-origin discrimination

under both New Hampshire's Law Against Discrimination, N.H. Rev.

Stat. Ann. ch. 354-A (Count I), and Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count II).

"Because the New Hampshire Supreme Court relies on Title VII

cases to analyze claims under RSA 354-A, the court will address

[Dipigney' state and federal] claims together using the Title

VII standard." Hubbard v. Tyco Intg. Cable Sys., Inc., 985 F.
Supp. 2d 207, 218 (D.N.H. 2013) (quoting Hudson v. Dr. Michael
J. O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 92
(D.N.H. 2011)).

A. Relevant Law

Under Title VII, it is unlawful for an employer to
discriminate against an employee because of the employee's
national origin. See 42 U.S.C. § 2000e-2(a)(1). Because there
is no direct evidence of discrimination in this case, the court
must "apply the burden-shifting analysis of McDonnell Douglas v.
Green, 411 U.S. 792 (1973), to help 'sharpen the inquiry into
the elusive factual question' of the employer's motivation."
Hicks v. Johnson, 755 F.3d 738, 744 (1st Cir. 2014) (quoting
Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 n.8
(1981); citing Johnson v. Univ. of P.R., 714 F.3d 48, 53-54 (1st
Cir. 2013)) (parallel citations omitted).

> Under that framework, if the plaintiff establishes a
> prima facie case of discrimination, an inference of
> discrimination arises, and the burden of production
> shifts to the defendant to produce evidence that the
> challenged employment action was taken for a
> legitimate, non-discriminatory reason. Johnson, 714
> F.3d at 53-54. If the employer supplies such
> evidence, the plaintiff is left with the burden to
> prove "by a preponderance of the evidence that the
> employer's proffered reason is pretextual and that the
> actual reason for the adverse employment action is
> discriminatory." Id. at 54; see also Pearson v. Mass.
> Bay Transp. Auth., 723 F.3d 36, 40 (1st Cir. 2013).

Hicks, 755 F.3d at 744.  Under the circumstances of this case,
to make out a prima facie case, Dipigney "must show that: (1)
[he] is a member of a protected class; (2) [his] employer took
an adverse employment action against [him]; (3) [he] was
otherwise qualified; and (4) [his] position remained open or was
filled by a person with qualifications similar to [his]."
Johnson, 714 F. 3d at 53 n.6 (citing García v. Bristol–Myers
Squibb Co., 535 F.3d 23, 30 n.2 (1st Cir. 2008); Rodriguez–
Cuervos v. Wal–Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir.
1999)).

   B. Prima Facie Case

   It is not entirely certain that Dipigney has established a
prima facie case.  There is no problem with the first three
elements.  Dipigney's West Indian heritage places him in a
protected class for purposes of a claim for national-origin
discrimination, and his discharge was an adverse employment
action.  AutoZoners does not contest the third element, and all
the evidence suggests Dipigney was otherwise qualified for his
position.  The difficulty arises with the fourth element.

   Dipigney has produced no evidence concerning what happened
to his position after he was discharged, i.e., whether the
position remained open or was filled by a person outside his

8

protected class.  But, the real gravamen of the fourth element
concerns whether the adverse employment action took place under
circumstances that would give rise to an inference of
discrimination.  In cases involving employment actions other
than discharge, courts have turned to evidence of disparate
treatment, see, e.g., Sellers v. U.S. Dep't of Defense, 654 F.
Supp. 2d 61, 91 n.65 (D.R.I. 2009), and that appears to be
Dipigney's approach to establishing the fourth element of his
prima facie case.  He points to evidence that one AutoZoners
employee (John Burrows) carried a knife at work without being
discharged and another (Iggy Farcone) carried a gun.  Leaving
aside AutoZoners' challenges to the admissibility of this
evidence, Dipigney's attempt to establish disparate treatment
suffers from a more fundamental problem; the lack of
comparability.

When making an argument based upon disparate treatment, "a
plaintiff must show that others similarly situated to him in all
relevant respects were treated differently by the employer."
Cham, 685 F.3d at 97 (quoting García, 535 F.3d at 31; citing
Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003))
(emphasis, internal quotation marks, and brackets omitted).
Here, assuming for the sake of argument that Dipigney has
produced sufficient evidence that two fellow employees outside

his protected class were not discharged for carrying weapons at work, he has fallen short of showing that he was similarly situated to those employees in all relevant respects. Specifically, he has not shown that those violations of company policy were the subject of customer complaints or were known to Thompson or any other AutoZoners District Manager.  Moreover, with regard to Burrows, Thompson has stated under oath that "[d]uring Burrows' employment, [he] was never aware and never heard of Burrows having knives or other weapons with him on store premises – nor did [he] ever receive a customer complaint regarding Burrows alleged possession of a weapon."  Def.'s Mem. of Law, Thompson Decl. (doc. no. 16-26) ¶ 18.  If Thompson knew about the violations of company policy by other employees that Dipigney identifies, and did not discharge the employees involved, that might well be enough to establish the fourth element of Dipigney's prima facie case.  But, it is Dipigney's burden to establish the requisite similarity between himself and his purported comparators, and he has not done so.

In sum, the court is not at all certain that Dipigney has established a prima facie case of national-origin discrimination.  But, as the burden of doing so is a modest one, see Ahmed v. Johnson, 752 F.3d 490, 497 (1st Cir. 2014) (quoting Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir.

2010)), the court assumes that Dipigney has established his prima facie case and, as a consequence, will continue with the McDonnell-Douglas analysis.  AutoZoners has produced evidence of a legitimate non-discriminatory reason for discharging Dipigney, his possession of a firearm on company property, in violation of company policy.  When, as here, "the defendant proffers legitimate reasons for the adverse action, the plaintiff must then prove by a preponderance that the proffered reasons by the defendant are a pretext for unlawful discrimination."  Aly v. Mohegan Council, Boy Scouts of Am., 711 F.3d 34, 46 (1st Cir. 2013) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)).

### C. Pretext

"Where a plaintiff makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment."  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 116 (1st Cir. 2013) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998); citing Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1993) (internal quotation marks and alterations omitted).  Still, "summary judgment may be appropriate even where elusive

11

concepts such as motive or intent are at issue." Kelley, 707 F.3d at 115 (quoting Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007); citing Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)) (internal quotation marks omitted).  This is one of those cases in which summary judgment in favor of the defendant on the issue of pretext is appropriate.

"[T]here is no mechanical formula for finding pretext." Kelley, 707 F.3d at 116 (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003)).

> Instead, "[i]t is the type of inquiry where 'everything depends on the individual facts.'"  [Che, 342 F.3d at] at 40 (quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir. 1999)).  The inquiry focuses on whether the employer truly believed its stated reason for taking action adverse to the employee.  See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7 (1st Cir. 2000).

Kelley, 707 F.3d at 116 (parallel citations omitted); see also Gray v. N.E. Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986) (explaining that "in assessing pretext . . . [the court's] focus must be on the perception of the decisionmaker, i.e., whether [the decisionmaker] perceived the plaintiff as violating . . . company policies and whether this perception was credible and reasonable").

No reasonable jury could conclude that Thompson did not reasonably believe that he terminated Dipigney because he brought a gun to work in violation of AutoZoners' company

policy.  Thompson received a complaint from a customer that
Dipigney was carrying a gun in the Hooksett store.  Dipigney
admitted to Haluga that he had done so.  The security provision
of AutoZoners' Store Handbook and Code of Conduct, quoted above,
may be reasonably construed as barring employees from bringing
guns onto company property.

Dipigney devotes considerable attention to explaining why
it was reasonable for him to believe that his possession of a
gun on company property was permissible.  That Dipigney
reasonably believed that company policy allowed him to carry his
gun on company property does not preclude Thompson from having a
reasonable belief that such conduct was prohibited.  The sine
qua non of ambiguity is the ability of a single word, phrase, or
sentence to support more than one reasonable interpretation, cf.
United States v. Suarez-Gonzalez, 760 F.3d 96 (1st Cir. 2014);
United States v. Okoye, 731 F.3d 46, 49 (1st Cir. 2013)), and
Dipigney's principal criticism of AutoZoners' policy on weapons
is its ambiguity.  In short, because no reasonable jury could
conclude that Thompson did not believe the reason he gave for
discharging Dipigney, AutoZoners is entitled to judgment as a
matter of law on Dipigney's discrimination claims.

That said, the court turns, briefly, to Dipigney's three
arguments against summary judgment.  First, he argues that

AutoZoners' inconsistent statements in discovery regarding who
made the decision to discharge him are sufficient to render its
explanation for his discharge unworthy of credence.  To the
contrary, AutoZoners has consistently maintained that Dipigney
was discharged for carrying a gun on company property, in
violation of company policy.  The company's statements, during
discovery, concerning who made the decision to discharge
Dipigney have no bearing on the relevant inquiry and,
furthermore, notwithstanding Dipigney's apparent contention that
AutoZoners tried to hide Thompson's role as the ultimate
decisionmaker, this order proceeds on the assumption that
Thompson did make the decision to discharge Dipigney.

     Second, Dipigney argues that pretext is established by the
disparate treatment he received.  "Disparate treatment may be
'competent proof that the explanation given for the challenged
employment action was pretextual.'"  Aly, 711 F.3d at 46
(quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 43–44
(1st Cir. 2001)).  But, as the court has already explained,
Dipigney has identified no comparators who were "similarly
situated . . . in all relevant respects," Aly, 711 F.3d at 46.
Accordingly, his disparate-treatment argument fails.

     Finally, Dipigney points to Thompson's comment about his
accent in May of 2011 as a fact that precludes summary judgment

because a reasonable jury could find that to have been an
expression of discriminatory animus.  Dipigney frames his
argument this way:

> Given the evidence that District Manager Thompson
> illegally discriminated against Mr. Dipigney based on
> his accent, and the evidence . . . that District
> Manager Thompson made the ultimate decision to fire
> Mr. Dipigney, a rational jury could find that national
> origin discrimination motivated Mr. Dipigney's
> termination.

Pl.'s Mem. of Law (doc. no. 25-2) 12.  Dipigney relies upon
Kelley for the proposition that "[o]ne well-established method
of demonstrating pretext is 'to show that discriminatory
comments were made by the key decisionmaker or those in a
position to influence the decisionmaker," 707 F.3d at 117
(quoting Santiago–Ramos v. Cent'l P.R. Wireless Corp., 217 F.3d
46, 55 (1st Cir. 2000); citing Domínguez–Cruz v. Suttle Caribe,
Inc., 202 F.3d 424, 433 n.6 (1st Cir. 2000); Palasota v. Haggar
Clothing Co., 342 F.3d 569, 578 (5th Cir. 2003).

    In Kelley, a case involving a retaliation claim under the
Americans with Disabilities Act, the decisionmaker made numerous
comments and took numerous actions that "were consistently
linked to [the plaintiff]'s disability and her need for
accommodation," 707 F.3d at 116.  Those comments and actions, in
turn, established retaliatory animus.  Here, by contrast, the
decisionmaker made a single comment about Dipigney's accent

eleven months before Dipigney's discharge and made that comment in response to statements from customers that they had difficulty understanding Dipigney on the telephone.  And, in the accent-animus case upon which Dipigney relies, the court ruled that discriminatory animus was demonstrated by a supervisor's harassment and negative treatment of the plaintiff coupled with her remark to the plaintiff that "people would be offended by his accent." Liberman v. Brady, 926 F. Supp. 1197, 1211 (E.D.N.Y. 1996).  Here, by contrast, Thompson did not suggest that there was anything offensive about Dipigney's accent, only that some of AutoZoners' commercial customers had difficulty understanding it.  Animus against unsuccessful telephone communications is hardly the same thing as animus against people from the West Indies.  Under the circumstances of this case, no rational jury could find that Thompson's comment in May of 2011 demonstrated animus that was the basis for Dipigney's discharge. That conclusion is bolstered by the following additional undisputed facts: (1) after Thompson made his comment about Dipigney's accent, he received a promotion, two pay raises, and a positive performance review, notwithstanding Thompson's purported discriminatory animus; and (2) Thompson made his decision to discharge Dipigney after an investigation conducted by, and a recommendation for Dipigney's termination that came

from, Nick Haluga, to whom Dipigney ascribes no discriminatory animus.

### Conclusion

For the reasons described above, AutoZoners' motion for summary judgment, document no. 16 is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


October 2, 2014

cc:   Michael D. Billok, Esq.
      Nicholas F. Casolaro, Esq.
      John J. Kennedy, Esq.
      Benjamin T. King, Esq.
      Jason R.L. Major, Esq.
      Jennifer L. Parent, Esq.